IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

GEORGE CHAVIS,

                                    Plaintiff,

            v.                          Civil Action No.
                                        9:03-CV-0755 (DNH/DEP)
J.A. BENNETT, *et al.*,

                                    Defendants.

APPEARANCES:                   OF COUNSEL:

FOR PLAINTIFF:

GEORGE CHAVIS, *pro se*

FOR DEFENDANTS:

OFFICE OF ATTORNEY GENERAL     PATRICK F. MACRAE, ESQ.
State of New York              Assistant Attorney General
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT, RECOMMENDATION AND ORDER

Plaintiff George Chavis, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action complaining of the deprivation of his civil rights based upon circumstances occurring at the correctional facility in which he was housed at the relevant times.  Plaintiff's complaint sets forth an amalgamation of claims which can be grouped into four general categories, including 1) alleged deliberate indifference to his serious medical needs; 2) deprivation of procedural due process, in connection with disciplinary actions taken against him; 3) interference with his access to the courts; and 4) cruel and unusual punishment.  Plaintiff's complaint seeks various forms of relief including compensatory damages of fifty million dollars and an order terminating the employment of each of the named defendants.

Currently pending before the court is a motion by the defendants for summary judgment dismissing plaintiff's complaint on a variety of grounds. Procedurally, defendants seek its dismissal based upon plaintiff's alleged refusal to provide court ordered discovery, and the failure to exhaust available administrative remedies with regard to certain of his claims. Substantively, defendants challenge the merits of plaintiff's various causes

of action as well as the sufficiency of his showing regarding their personal involvement in the violations alleged.  For the reasons set forth below, I recommend that defendants' motion be granted, and plaintiff's complaint dismissed in its entirety.

I.   BACKGROUND

Plaintiff is a New York State prison inmate, entrusted to the custody of the New York State Department of Correctional Services ("DOCS").  At the times relevant to his claims, Chavis was confined within the Upstate Correctional Facility ("Upstate").

As was earlier noted, plaintiff's complaint alleges conduct by the defendants falling into four broad categories.  Generally speaking, those categories include 1) denial of access to the courts; 2) deliberate indifference to plaintiff's serious medical needs; 3) violation of plaintiff's due process rights, and 4) cruel and unusual punishment.[1]  The facts surrounding those groupings of claims will be separately stated.

A.   Access to Courts

_____

[1]   The court is significantly handicapped in its evaluation of plaintiff's claims, given the lack of any affidavits from the defendants, as well as plaintiff's refusal to respond to questions posed during his court ordered deposition.  Both the defendants and the court have been further hampered in their ability to assess plaintiff's deliberate medical indifference claims based upon his refusal to authorize release of his DOCS medical records.

3

Plaintiff's court access denial claims are based upon four separate occurrences.  Plaintiff alleges that on March 4, 2003, defendant J.A. Bennett, a law library officer, deprived him of legal documents related to a federal court civil action, denying a request that he be provided with twenty-two photocopies of the summons and complaint in the action, and that on that and other dates defendant Bennett additionally failed to return legal copies related to a civil action apparently brought by the plaintiff in a state court, leading to dismissal of that suit.  Amended Complaint (Dkt. No. 5) § 6, at 4-4(1); Plaintiff Opposition (Dkt. No. 61) at 12-B-14.

The second incident giving rise to plaintiff's court access claim is alleged to have occurred on April 21, 2003, involving confiscation by defendant W. Richards, a corrections officer, during a cell search – characterized by the plaintiff as "unauthorized" – of certain of plaintiff's legal papers related to a pending federal civil case, and the subsequent issuance of a retaliatory misbehavior report to divert attention from that theft of his legal materials.  Amended Complaint (Dkt. No. 5) § 6, at 4(1)-4(2).  Plaintiff alleges that defendants LaClair and King also participated in the confiscation of those legal materials.  *Id.*, at 4(3)-4(4), 4(8).

Plaintiff's complaint further alleges that on September 6, 2002,

4

defendant Price, another corrections officer, confiscated outgoing mail sent by the plaintiff, containing an appeal from a disciplinary hearing. According to Chavis, the interception of that outgoing communication resulted in the dismissal of a judicial proceeding commenced under New York Civil Practice Law and Rules Article 78, challenging that hearing determination, for failure to exhaust remedies.  Amended Complaint (Dkt. No. 5) § 6, at 4(4)-4(5).

The last incident advanced in support of plaintiff's court access claims involves a conference call conducted by United States Magistrate Judge H. Kenneth Schroeder, from the Western District of New York, on June 3, 2003, in connection with a federal court action pending in that district.  Amended Complaint (Dkt. No. 5) § 6, at 4(11)-4(12); Defendants' Motion (Dkt. No. 60) Exh. H.  Defendant maintains that his participation in that conference call was impeded by defendants S. Salls and Rayville, two DOCS corrections officials, through their refusal to remove his handcuffs in order to allow him to lift the telephone receiver.  *Id.*  Based upon the denial of his request for removal of those restraints, and the court's decision not to order corrections officials to remove the plaintiff's waist chain, Chavis refused to participate in the court conference.  *Id.*

5

B.    Deliberate Indifference

Plaintiff's deliberate indifference claims surround his contention that prison medical officials at Upstate were deliberately indifferent to his medical condition, described by him as involving allergic reactions similar in nature to hives.  Amended Complaint (Dkt. No. 5) § 6, at 4(2)-4(3), 4(5)-4(10).  According to Chavis, he received some treatment and medication for the condition.

Plaintiff alleges that on March 2, 2003, while confined within Upstate's special housing unit ("SHU"), his request for medical assistance was ignored by defendant Lashway, a member of the prison medical staff.[2]  Amended Complaint (Dkt. No. 5) § 6, at 4(2)-4(3); Defendants' Motion (Dkt. No. 60) Exh. I.  Defendants controvert this assertion, maintaining that plaintiff did not make a sick call request on March 2, 2003, and was asleep during medical rounds on the following day. Defendants' Motion (Dkt. No. 60) Exh. I.

Plaintiff further asserts that on March 29, 2003, while still confined within the facility's SHU, defendant Lashway denied his request to see a

---

[2]    The record is equivocal as to the correct spelling of this defendant's name.  While she is sued by the plaintiff as "Laschway," in their motion papers defendants refer to her as "Lashway," which spelling the court will adopt.

doctor to address his allergic condition, instead administering Benadryl and advising that she would send a physician to see him in his SHU cell.[3] Amended Complaint (Dkt. No. 5) § 6, at 4(2); Defendants' Motion (Dkt. No. 60) Exh. J.  In a similar vein, plaintiff further alleges that on April 15, 2003 defendant Ryan deprived him of the  opportunity to see a prison doctor during a sick call at which Chavis presented, suffering from an allergic reaction.  Amended Complaint (Dkt. No. 5) § 6, at 4(5)-4(6); Defendants' Motion (Dkt. No. 60) Exh. K.  Plaintiff maintains that on that occasion he experienced face swelling, neck and head pain, and extreme itching and bleeding from his body and scalp.  *Id.*

Plaintiff asserts that despite having written to defendant Gerber, his guidance counselor, on several occasions complaining of his medical care, on April 9, 2003 Gerber ignored his "repeated written requests for emergency medical-health care"; no specifics are provided, however, regarding the condition experienced on that occasion.  Amended Complaint (Dkt. No. 5) § 6, at 4(6)-4(7); Defendants' Motion (Dkt. No. 60) Exh. L.

---

[3]      While it is unclear from his complaint, Chavis apparently contends that he should have been permitted to leave the SHU and visit the prison infirmary in order to see a doctor on that occasion.

Similarly, plaintiff alleges that on several occasions during May and June of 2003, defendant Johnson – described by Chavis as a civilian employed at Upstate – ignored his request for emergency medical care for what he characterizes as his chronic conditions, apparently referencing his allergic reactions.  Amended Complaint (Dkt. No. 5) § 6, at 4(9); Defendants' Motion (Dkt. No. 60) Exhs. M, N.  Plaintiff further alleges that defendant Weissman, identified in plaintiff's complaint as the Prison Health Service Director, denied plaintiff emergency medical care for two serious allergy attacks and several milder ones.  Amended Complaint (Dkt. No. 5) § 6, at 4(9)-4(10); Defendants' Motion (Dkt. No. 60) Exh. O. Plaintiff also complains of the denial by defendant Weissman of requests for medication to address his condition.  Amended Complaint (Dkt. No. 5) § 6, at 4(9)-4(10).

C.    Procedural Due Process

Plaintiff's procedural due process claims are stated in only brief, conclusory terms.  *See* Amended Complaint (Dkt. No. 5).  Plaintiff maintains that on November 12, 2002 defendant Fitchette, a corrections officer, denied him an opportunity to appear at a disciplinary hearing, and to obtain assistance prior to the hearing, adding that he was never

provided with a hearing disposition which would allow him to perfect an administrative appeal from the determination.[4]  Amended Complaint (Dkt. No. 5) § 6, at 4(3); Defendants' Motion (Dkt. No. 60) Exh. P.  That hearing was apparently convened to address written threats made by Chavis to a corrections officer and a judge, and resulted in a finding of guilt and imposition of nine months of disciplinary SHU confinement, with a corresponding loss of package, commissary and telephone privileges and good time credits.[5]  Defendants' Motion (Dkt. No. 60) Exh. P.

Plaintiff also alleges a due process violation stemming from Tier II hearings conducted on January 6, 2003 by Lieutenant Donald Quinn to address misbehavior reports accusing Chavis of harassing and threatening DOCS employees at the prison facility.[6]  Amended Complaint

_____

[4]     While she is sued by the plaintiff as "Fechette," in their motion papers defendants refer to her as "Fitchette," which spelling the court will adopt.

[5]     It is alleged that in a written communication to the Upstate Superintendent plaintiff threatened bodily harm to a corrections officer, and that Chavis sent a letter to the Judicial Commission complaining of Judge Edgar C. Nemoyer and stating, *inter alia*, "this judge needs to die."  Defendants' Motion (Dkt. No. 60) Exh. P.

[6]     The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace*, 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

(Dkt. No. 5) § 6, at 4(8); Defendants' Motion (Dkt. No. 60) Exhs. S, T.

Plaintiff maintains that defendant Quinn should not have been appointed

as a hearing officer in the matter in light of the fact that at the time, he was

a defendant in a pending federal court action brought by Chavis, also

asserting a procedural due process violation.  Amended Complaint (Dkt.

No. 5) § 6, at 4(8).

> D.    Cruel and Unusual Punishment

Plaintiff's complaint also asserts a cause of action for cruel and

unusual punishment, based upon the allegation that during March and

April of 2003 defendant Streeter, a corrections officer, deprived him of

meals within his SHU cell in various ways which are somewhat unclear,

although they apparently include throwing his food on the floor.  Amended

Complaint (Dkt. No. 5) § 6, at 4(7); Defendants' Motion (Dkt. No. 60) Exh.

G.  Plaintiff also alleges that approximately two and one half years prior to

the filing of his complaint defendant D. LaClair, Deputy Superintendent of

Security, assigned a person characterized by plaintiff as a "witness" to an

SHU double occupancy cell with a prisoner suffering from emotional

difficulties, resulting in the witness suffering a beating death apparently at

the hands of that other inmate.  Amended Complaint (Dkt. No. 5) § 6, at

4(3)-4(4).

II.     PROCEDURAL HISTORY

Plaintiff commenced this action on June 18, 2003, and subsequently

filed an amended complaint, at the direction of the court, on July 3, 2003.

Dkt. Nos. 1, 5.  Named as defendants in Chavis' amended complaint are

J. A. Bennett, a law library officer; W. Richards, a corrections officer; (first

name unknown) Lashway, a civilian medical employee at Upstate; (first

name unknown) Fechette, a corrections officer; D. LaClair, Deputy of

Security; (first name unknown) Price, a corrections officer; S. Ryan,

another civilian medical employee at the facility; (first name unknown)

Gerber, a prison counselor; (first name unknown) Streeter, a corrections

officer; D. Quinn, a corrections officer; S. King, a corrections officer; (first

name unknown) Johnson, a civilian medical employee at Upstate; (first

name unknown) Weissman, prison health service director; and (first name

unknown) Rayville, whose position is not readily apparent.[7]  Answers to

plaintiff's amended complaint have since been interposed on behalf of all

of the named defendants, including on November 26, 2003 (Dkt. No. 26),

March 5, 2004 (Dkt. No. 29) and May 13, 2004 (Dkt. No. 35).

---

[7]     The foregoing listing of positions is based upon information received from the defendants and, to some degree, confirmed by plaintiff's amended complaint.

11

On May 21, 2004, after having issued a scheduling order to govern the progression of the case, *see* Dkt. No. 28, the court received a request from defendants' counsel for permission to depose Chavis, pursuant to Rule 30(a)(2) of the Federal Rules of Civil Procedure.  Dkt. No. 36.  That request was granted by order dated May 24, 2004.  Dkt. No. 37.

On July 8, 2004 defendants' counsel appeared at Upstate and attempted to depose the plaintiff in accordance with the court's order. *See* Defendants' Motion (Dkt. No. 60) Exh. A.  During that deposition, however, plaintiff refused to answer any of counsel's questions, characterizing the deposition as "discriminatory" and invoking the Fifth Amendment in response to many of counsel's questions.  *See id.*

On December 3, 2004, following the close of discovery, defendants moved seeking summary judgment dismissing plaintiff's complaint on a variety of grounds.  Dkt. No. 60.  In addition to challenging plaintiff's claims on the merits, defendants' motion seeks dismissal on the procedural basis of his refusal to comply with legitimate discovery requests and additionally, in certain instances, his failure to exhaust available administrative remedies before commencing suit.  Plaintiff has since responded in opposition to defendants' motion by papers filed on

January 3, 2005.  Dkt. No. 61.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Plaintiff's Failure to Cooperate at his Deposition

In their motion, defendants seek sanctions based upon plaintiff's refusal to cooperate during his deposition, which was to have been conducted pursuant to this court's order.  Among the sanctions sought are dismissal of plaintiff's complaint and an award of expenses incurred in connection with the aborted deposition.

Plaintiff's deposition was scheduled pursuant to a court order, issued under Rule 30(a)(2) of the Federal Rules of Civil Procedure.  Dkt. No. 37.  That order notified Chavis that his failure "to attend, be sworn and answer questions may result in sanctions including dismissal of the action pursuant to Rule 37 of the Federal Rules of Civil Procedure."  *See id.*

Plaintiff appeared for his deposition on a date noticed by defendants' counsel.  At that deposition, however, despite the issuance of

my order, after providing the questioner with his name and inmate

identification ("DIN") number, plaintiff stated that he was "objecting to this

deposition", arguing that it was discriminatory and violated his

constitutional rights.  *See* Defendants' Motion (Dkt. No. 60) Exh. A, at 5-6.

Plaintiff went on to elaborate, stating as follows:

> This deposition is also being conducted to belittle
> me, to oppress me, to harass me, to humiliate me,
> to aggravate me, belittle me and degrade me.
> Defense counsel is using this deposition to
> discredit my character as a plaintiff in this case,
> and therefore I am objecting to it, and I'm also
> insisting on a suspension of it.

*Id.*, at 7.

From a review of the transcript of the plaintiff's deposition, his

unwillingness to cooperate during a court ordered deposition, and to

authorize the release of highly relevant medical records sought by

defendants to probe his medical indifference allegations, rings clear.  At

an early stage of the deposition, after plaintiff had voiced his objection to

the proceeding, the following exchange occurred between Chavis and

defendants' counsel.

Q.    Are you going to answer my questions?

A.    No, I'm not.

14

> Q.    Are you going to answer any of my questions?
>
> A.    No, I'm not.

Defendants' Motion (Dkt. No. 60) Exh. A, at 5.  Additionally, when

presented with authorizations for the release of both medical and

psychiatric records, plaintiff advised that he would not sign those

authorizations.[8]  Defendants' Motion (Dkt. No. 60) Exh. A, at 30.  Plaintiff's

conscious decision not to answer questions posed during his court-

ordered deposition or authorize the release of his medical records is thus

firmly and unequivocally established.

Having reviewed the transcript of plaintiff's deposition I find no

support for plaintiff's contention that the attorney conducting the

deposition was acting in bad faith, or for any purpose other than to probe

the allegations set forth in plaintiff's complaint and the evidence which

Chavis would offer to support such allegations.  I further find that plaintiff's

exceptions to the deposition were not well taken, and did not justify his

failure to cooperate.[9]

---

[8]      Plaintiff's psychiatric records were sought in light of his claim for recovery
of compensatory damages for mental anguish and emotional distress.  In light of that
claim, those medical records are clearly relevant, and thus discoverable.  *See*, *e.g.*,
*Davidson v. Dean*, 204 F.R.D. 251, 254-58 (S.D.N.Y. 2001).

[9]      In his submissions in opposition to defendants' motion filed on January 3,
2005 plaintiff asserts a failure by defendants to properly respond to interrogatories

The question remains what, if any, appropriate sanctions should result from plaintiff's refusal to cooperate in his deposition.[10]  The failure to comply with court ordered discovery is governed principally by Rule 37(b) of the Federal Rules of Civil Procedure, which makes available to the court an array of remedies of varying severity in the event of such a failure including, *inter alia*, the issuance of a contempt order, the striking of the recalcitrant party's pleading, and entry of a preclusion order.  Fed. R. Civ. P. 37(b).  In addition, that rule requires that

> [i]n lieu of any of the foregoing orders or in addition therefore, the court shall require the party failing to obey the order . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

*Id.*

---

served by him.  Such a failure, if true, would not necessarily provide a basis for plaintiff's failure to abide by a court order requiring him to appear for deposition.  *See Lindstedt v. City of Granby*, 238 F.3d 933, 935-37 (8th Cir. 2000).  In any event it appears that plaintiff did not raise this issue prior to March 30, 2004, the deadline established in a scheduling order issued in this action on January 29, 2004 to file nondispositive motions, including motions to compel discovery.  *See* Dkt. No. 28.

[10]    Although both the Federal Rules of Civil Procedure and the local rules of this court require good faith efforts to resolve discovery differences before seeking court intervention, based upon the circumstances of this case, I find no reason to conclude that such efforts would have proven fruitful, and thus will not rely on this as a ground for denial of defendants' motion.

In this instance plaintiff's failure to answer questions regarding his claims, exacerbated by his refusal to sign an authorization for the release of medical records despite asserting, *inter alia*, a claim of deliberate indifference to his medical needs in his complaint, was unjustified and critically hampered defendants' ability to probe plaintiff's allegations and prepare a defense to them.

In determining whether the ultimate remedy of dismissal is an appropriate sanction for plaintiff's failure to comply with a discovery order, the court must consider several factors, including 1) the willfulness of the actions taken by the noncompliant party; 2) the efficacy of lesser sanctions; 3) the duration of the period of noncompliance; and 4) the notice provided to the recalcitrant plaintiff of the potential consequences of his or non-compliance. *Davidson*, 204 F.R.D. at 255. In making that review the court should also consider that although he does not appear to be a litigation novice, Chavis is proceeding *pro se*. *Id.* at 257-58 (citing, *inter alia*, *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994)).

In situations such as this the court retains the discretion to determine the appropriate sanction to be imposed, including the ultimate

measure of dismissal.  *See Valentine*, 29 F.3d at 49-50.  In light of

plaintiff's conduct, I recommend that that discretion be exercised in favor

of dismissal.  *McDonald v. Head Criminal Court Supervisor Officer*, 850

F.2d 121, 124 (2d Cir. 1988).  As the Second Circuit noted in *McDonald*,

> all litigants, including pro ses, have an obligation to
> comply with court orders.  When they flout that
> obligation they, like all litigants, must suffer the
> consequences of their actions.

*McDonald*, 850 F.2d at 124.  Under the circumstances now presented I

find that plaintiff's refusal to allow his deposition to be taken, and to

authorize the release of highly relevant medical records, was entirely

unjustified, and that the court's order adequately apprised him of the

possibility that his refusal to be deposed could result in dismissal of his

claims.  Accordingly, I recommend that his complaint be stricken and this

action be dismissed based upon that failure.

In addition to dismissal, in their motion defendants also seek an

award of expenses associated with plaintiff's conduct.  Specifically,

defendants request recovery of the expense of traveling a total of 362

miles to conduct the court-ordered deposition, at a rate of $.375 per mile,

for a total of $135.75, as well as stenographic fees, in the amount of

$113.85.  Additionally, defendants seek compensation for eight hours of

attorney's fees, calculated at a rate of $175.00 per hour, for the failed deposition, for a total additional award of $1400.[11]

Defendants' request for reimbursement of expenses associated with the failed deposition has facial appeal.  Armed with a court order directing the plaintiff to appear for deposition, defendants' counsel traveled to the facility in which plaintiff was housed with the expectation of taking his deposition, and incurred expenses, including stenographic fees, in connection with the unfruitful exercise.  In this case, however, it appears that making the requested award of costs and attorneys' fees and would be a "hollow gesture" due to plaintiff's indigency and incarceration.  *Plevy v. Scully*, 89 F.R.D. 665, 667 (W.D.N.Y. 1981); *see also Davidson,* 204 F.R.D. at 258 (refusing to recommend an award of attorney's fees due to plaintiff's poverty and the very real possibility that he would never be released).  Accordingly, particularly given my recommendation that plaintiff suffer the harsh sanction of having his complaint in this action dismissed, I

---

[11]     The defendants in this case are represented by a salaried Assistant Attorney General. Accordingly, unlike the usual situation presented in such a fee application, defendants are not "out-of-pocket" with respect to the attorney's fees, as distinct from the disbursements, associated with the failed deposition.  This fact, however, does not automatically preclude recovery of attorney's fees by a salaried attorney, calculated at an amount consistent with prevailing hourly rates in the community for similar services.  *See Carter v. State of Rhode Island, Dept. of Corrs.*, 25 F. Supp.2d 24, 26 (D.R.I. 1998).

recommend against also awarding defendants the costs and attorney's

fees associated with plaintiff's failure to appear for deposition as directed

by the court.

     B.   Summary Judgment Standard

     Summary judgment is governed by Rule 56 of the Federal Rules of

Civil Procedure.  Under that provision, summary judgment is warranted

when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits . . . show that there is no

genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505,

2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight*

*Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for

purposes of this inquiry, if "it might affect the outcome of the suit under the

governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also*

*Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing

*Anderson*).  A material fact is genuinely in dispute "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most

favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

### C.    Exhaustion of Remedies

In their motion, defendants assert that many of the claims now being raised by Chavis are barred by virtue of his failure to exhaust available, internal administrative remedies with respect to those claims before commencing suit. Defendants' exhaustion argument is comprised of two distinct elements. First, defendants argue that at the time of commencement of this action, plaintiff failed to file a grievance at all with respect to his court access claims against defendant Price, and had not fully exhausted administrative remedies with regard to grievances filed implicating defendants LaClair, Ryan and Weissman. Additionally, defendants maintain that while plaintiff did file and pursue grievances to

22

completion as against defendants Bennett, Richards, Streeter, Ryan and Johnson, his refusal to cooperate in the investigations associated with those grievances effectively nullified the grievance process, and should result in a finding that he did not properly exhaust administrative remedies with regard to those matters as well.

### 1.   Exhaustion Generally

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), altered the inmate litigation landscape considerably, imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  One such restriction introduced by the PLRA requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002).

23

New York prison inmates are subject to an Inmate Grievance Program established by the DOCS, and recognized as an "available" remedy for purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The New York Inmate Grievance Program consists of a three-step review process.  First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within fourteen days of the incident.[12]  7 N.Y.C.R.R. § 701.7(a).  The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance.  7 N.Y.C.R.R. § 701.7(a).  If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision.  *Id.* § 701.7(b).  The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision.  *Id.* § 701.7(c).  Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in federal

---

[12]     The Inmate Grievance Program supervisor may waive the timeliness of the grievance submission due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.7(a)(1).

court.  *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002)

(citing, *inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284,

at *3 (S.D.N.Y. Dec. 11, 2000)).

### 2.   Failure To Fully Exhaust Before Filing Suit

Plaintiff commenced this action on June 18, 2003.  In order to have

fully satisfied his exhaustion requirement, plaintiff must have pursued

each of his grievances related to the conduct now at issue to the CORC

prior to commencement; failure to appeal an unfavorable disposition

regarding a grievance to, and to receive a decision from the CORC, prior

to commencement of suit requires dismissal of any claim corresponding to

that grievance, notwithstanding that the requirement may have been

satisfied after commencement of the action.[13]  *Neal v. Goord*, 267 F.3d

116, 122-23 (2d Cir. 2001).

The record now before the court now discloses that the plaintiff filed

the following grievances with respect to the various matters addressed in

---

[13]     While in the past many courts adopted a total exhaustion requirement, by which plaintiff's complaint would be subject to dismissal in its entirety based upon the presence of both exhausted and unexhausted claims, the Second Circuit has since made it clear that in such a mixed situation only the unexhausted claims are subject to dismissal, without prejudice. *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004), *cert. denied*, 125 S. Ct. 1398 (2005); *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002).

his complaint:[14]

| Date | Griev. No. | Subject | Exh. | Appeal to CORC |
|------|-----------|---------|------|----------------|
| 3/18/03 | UST-15247-03 | Filed against defendant Bennett related to photocopy request | D | Yes |
| 3/18/03 | UST-15248-03 | Denial by defendant Bennett of plaintiff's request for twenty-two photocopies | E | Yes |
| 4/23/03 | UST-15697-03 | Cell search and issuance of allegedly retaliatory misbehavior report against defendants Richards and LeClair | F | Yes, after commencement of suit |
| 3/8/03 | UST-15195-03 | Alleged tampering with inmates' meals | G | Yes |
| 3/5/03 | UST-15122-03 | Denial of medical care of 3/2/03 | I | No |
| 4/4/03 | UST-15477-03 | Denial of medical care by defendant Lashway | J | Yes |
| 4/15/03 | UST-15639-03 | Alleged denial of medical care by defendant Ryan | K | Yes, after commencement of suit |

_____

[14]    Plaintiff also filed grievance no. UST-14746-03 on January 15, 2003 claiming that defendant Quinn should not have acted as a hearing officer in the disciplinary proceedings resulting from the two misbehavior reports issued after plaintiff's characterization and a letter to the New York State Judicial Commission, of Judge Edgar Nemoyer as having a "klu [sic] klux klan affiliation" and stating that "this judge needs to die[.]"  That grievance was denied based upon the fact that it inappropriately attempted to collaterally challenge a disciplinary hearing through means other than direct appeal.  The defendants do not rely upon this grievance and plaintiff's failure to appeal that determination as a basis for dismissal of that portion of plaintiff's claims for failure to exhaust administrative remedies.

| Date | Griev. No. | Subject | Exh. | Appeal to CORC |
|------|-----------|---------|------|----------------|
| 4/15/03 | UST-15603-03 | Alleged failure by defendant Gerber to intervene with regard to denial of medical treatment | L | Yes |
| 5/16/03 | UST-15880-03 | Involves alleged denial of defendant Ryan of medical treatment | M | Yes, after commencement of suit |
| 5/21/03 | UST-15927-03 | Alleged denial of medical care by defendant Johnson | N | Yes, after commencement of suit |
| 6/24/03 | UST-16239-03 | Alleged denial by defendant Weissman of medical care | O | Yes, after commencement of suit |

In this instance the record establishes that plaintiff did not grieve the alleged confiscation by defendant Price on September 6, 2002 of plaintiff's appeal of a disciplinary hearing determination from the outgoing prison mail. The record also discloses that grievance nos. UST-15697-03, including a cell search/retaliatory misbehavior reports; UST-15639-03, related to medical treatment afforded by defendant Ryan; UST-15880-03, related to medical indifference by defendant Ryan; UST-15927-03, related to denial of medical treatment by defendant Johnson; and UST-16239-03, which was not filed until after commencement of suit and addressed medical treatment by defendant Weissman, were not pursued by plaintiff to completion and determined finally by the CORC under the inmate

grievance process prior to commencement of suit.[15]  The claims

associated with those grievances as well as plaintiff's claims against

defendant Price are thus subject to dismissal based upon plaintiff's failure

to satisfy his obligation under the PLRA to exhaust available

administrative remedies prior to commencing suit.  *Neal*, 267 F.3d at 122-

23.

> 3.    Failure to Cooperate with Grievance Investigators

In addition to arguing that plaintiff did not fully satisfy the

requirements of the inmate grievance program by taking steps to pursue

grievances to completion, defendants contend that he should be deemed

not to have satisfied his exhaustion requirement even with regard to

certain of those grievances which were filed and timely pursued to the

CORC, based upon his refusal to cooperate with that process.

---

[15]    The record now before the court suggests the failure on the part of plaintiff to fully exhaust administrative remedies with regard to his claim of deprivation of medical treatment on March 5, 2003.  Defendants' Motion (Dkt. No. 60) Exh. I. Additionally, plaintiff failed to appeal the hearing officer's determination resulting from the disputed November 12, 2002 and January 6, 2003 tier hearings, something which would effectively preclude his ability to claim a due process violation with respect to those matters.  *E.g.*, *Foreman v. Goord*, No. 02 Civ. 7089, 2004 WL 1886928, at *6 (S.D.N.Y. Aug. 23, 2004).  Because exhaustion is a waivable defense, however, and is not jurisdictional, *see Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citing *Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003) and *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999)), I have not *sua sponte* addressed those additional apparent failures on plaintiff's part to fully exhaust available administrative remedies before commencing suit.

Defendants assert, for example, that during the investigation of grievance UST-15248-03, related to the failure by defendant Bennett to provide him with requested legal copies, plaintiff refused to discuss the complaint with Corrections Sergeant King during the course of the grievance process. Defendants' Motion (Dkt. No. 60) Exh. E.  Similarly, on June 8, 2003, plaintiff allegedly refused to discuss a grievance filed on April 23, 2003 (UST-15697-03), alleging that his legal documents had been disrupted and some stolen, and that a misbehavior report was issued in retaliation for having asserted those claims.  *See id.* Exh. F.  Defendants also note when contacted on May 21, 2003 by defendant Johnson, who was assisting in the investigation of his grievance filed against defendant Ryan for alleged deprivation of medical care (UST-15880-03), the assistant was told to "go away", leading the IGRC to conclude that plaintiff was uncooperative.[16]  Defendants' Motion (Dkt. No. 60) Exh. M.

Later, on June 10, 2003, when Nurse Administrator Tousignant attempted to interview the plaintiff regarding the grievance filed against defendant Johnson for failure to provide medical care (UST-15937-03),

---

[16]     In his appeal to the CORC from the Superintendent's denial of the grievance, plaintiff stated that the superintendent "can drop dead in cold hell[.]" Defendants' Motion (Exh. 60) Exh. M.

plaintiff responded "that's a court issue.  Ain't nothing I'm going to say to you about it."  Defendants' Motion (Dkt. No. 60) Exh. N.  Similarly, when addressing a grievance filed by the plaintiff against defendant Weissman based upon the alleged denial by her of medical treatment (UST-16239-03), the IGRC noted that plaintiff "is often uncooperative with medical and refused to speak with the PA when he went to [plaintiff's] cell on 6/20/03."  *Id.* Exh. O.

The record now before the court reflects that Chavis is no stranger to the grievance process, nor is he unfamiliar with the procedure for pursuing a grievance through to the CORC stage.  The requirement to exhaust available administrative remedies by pursuing the established grievance process is more than a mere formality; the grievance process serves the desirable purpose of promoting resolution of differences at the local level on an informal, less adversarial basis, and avoids unnecessary litigation and the concomitant strain on precious and heavily taxed judicial resources.  *Neal*, 267 F.3d at 122.  While the plaintiff successfully went through the motions on many occasions, having filed and pursued numerous grievances through to the CORC, his lackluster efforts to cooperate with officials in investigating various of those grievances should

not be condoned.  Plaintiff's apparent belief in the futility of pursuing the

grievance process does not provide a basis for excusing the PLRA's

exhaustion requirement in this case.  *Jeanes v. U.S. Dept. of Justice*, 231

F. Supp.2d 48, 51-52 (D.D.C. 2002) (citing, *inter alia*, *Booth v. Churner*,

532 U.S. 731, 741 n.6, 121 S. Ct. 1819, 1825 n.6 (2001)).  "[E]ven though

the plaintiff reasonably believed that attempting to resolve his grievances

at the institutional level would have been a waste of time, he cannot

bypass those stages unless the agency agrees with him."  *Id.* at 52.

Under the circumstances, I recommend a finding that because of his

outright refusal to cooperate with the grievance investigations referenced

above, his claims against defendants Bennett, Richards, Streeter, Ryan

and Johnson are subject to dismissal on the basis of failure to exhaust.

D.    Merits of Remaining Claims

After elimination of the claims which are subject to the exhaustion

requirement, but which were not fully exhausted prior to commencement

of the action, it appears that the following claims, falling into four separate

categories, remain for determination: 1) denial of court access, including

based upon the denial by defendant Bennett of legal materials; 2)

deliberate indifference to plaintiff's serious medical needs on the part of

31

defendant Lashway, on or about March 29, 2003, and failure of defendant

Gerber on or about April 9, 2003 to intervene with regard to such matters;

3) cruel and unusual punishment, based upon tampering with or

adulteration of plaintiff's food trays within SHU in April and March of 2003;

and 4) alleged due process violations associated with tier hearings by

defendant Fechette in November of 2002 and defendant Quinn on or

about January 6, 2003.  Defendants seek dismissal of these claims on the

merits.

## 1.   Court Access

Plaintiff's first claim alleges that defendant Bennett denied his right

to court access by failing to provide him with twenty-two copies of a

summons and complaint as requested, and by failing to return legal copies

for an active state civil action which, he alleged, resulted in his dismissal.

Without question, an inmate's constitutional right to "meaningful"

access to the courts is firmly established.  *Bounds v. Smith*, 430 U.S. 817,

823, 97 S. Ct. 1491, 1495 (1977) (citations and internal quotation marks

omitted).  Although in *Bounds* the Supreme Court held that this right of

access requires prison authorities "to assist inmates in the preparation

and filing of meaningful legal papers by providing prisoners with adequate

law libraries or adequate assistance from persons trained in the law[,]" *id.*

at 828, 97 S. Ct. at 1498, the Court later clarified that

> prison law libraries and legal assistance programs are not
> ends in themselves, but only the means for ensuring a
> reasonably adequate opportunity to present claimed violations
> of fundamental constitutional rights to the courts.  Because
> *Bounds* did not create an abstract, freestanding right to a law
> library or legal assistance, an inmate cannot establish relevant
> actual injury simply by establishing that his prison's law library
> or legal assistance program is subpar in some theoretical
> sense.

*Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. 2174, 2180 (1996) (internal

quotations and citations omitted).  Instead, an inmate "must go one step

further and demonstrate that the alleged shortcomings in the library or

legal assistance program hindered his efforts to pursue a legal claim."  *Id.*

In other words, to establish a violation of the right of access to the courts,

a plaintiff must demonstrate that defendants' interference caused him or

her actual injury – that is, that a "nonfrivolous legal claim had been

frustrated or was being impeded" as a result of defendants' conduct.  *Id.*

at 353, 116 S. Ct. at 2181.

The court access claims against defendant Bennett surround his

alleged refusal to provide Chavis with twenty-two copies of each of the

summons and complaint in a federal court action.  Neither plaintiff's

complaint nor his motion papers, however, identify any prejudice suffered

33

as a result of the failure to provide him with the requested number of photocopies.[17]  Plaintiff's court access claim, insofar as it relates to the twenty-two copy incident, is therefore deficient based upon his failure to demonstrate actual injury.  *See Gill v. PACT Org.*, No. 95 Civ. 4510, 1997 WL 539948, at *4-*5 (S.D.N.Y. Aug. 28, 1997).

### 2.    Medical Indifference

Plaintiff alleges that on or about March 29, 2003 defendants Lashway, Ryan and Johnson were deliberately indifferent to his serious medical needs by failing to properly respond to an allergy attack suffered by him, and that on or about April 9, 2003 defendant Gerber was deliberately indifferent to his medical needs by refusing to intercede on his behalf.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are "incompatible with the evolving standards of decency that mark the progress of a maturing society."[18]

---

[17]    The need for twenty-two copies was questioned by the defendants in light of the fact that the federal court action in the context of which those copies were sought had only one single named defendant.

[18]    That amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

*Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S.Ct. 285, 290 (1976)

(citations and internal quotations omitted); *see also Whitley v. Albers*, 475

U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986) (citing, *inter alia*, *Estelle*).

While the Eighth Amendment "'does not mandate comfortable

prisons'", neither does it tolerate inhumane ones; thus the conditions of an

inmate's confinement, including medical care, are subject to Eighth

Amendment scrutiny. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct.

1970, 1976 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101

S.Ct. 2392, 2400 (1981)).  To succeed on a claim alleging that prison

conditions, including but not limited to medical care, violate the Eighth

Amendment, a plaintiff must satisfy both an objective and a subjective

requirement – the conditions must be "sufficiently serious" from an

objective point of view, and the plaintiff must demonstrate that prison

officials acted subjectively with "deliberate indifference".  *Farmer*, 511 U.S.

at 834, 114 S. Ct. at 1977 (citations and internal quotations omitted); *see*

*also Leach v. Dufrain*, 103 F. Supp.2d 542, 546 (N.D.N.Y. 2000) (Kahn,

J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo*

*v. Goord*, No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1,

1998) (Kahn, J. and Homer, M.J.) (also citing, *inter alia*, *Wilson* ).

35

In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, "'sufficiently serious'".  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citing *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain'."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted).  A serious medical need can also exist where "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'" – since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts*.  Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*).  Relevant factors in making this determination include injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or "'chronic and substantial pain.'"  *Chance*, 43 F.3d at 701 (citation omitted).

Deliberate indifference, in a constitutional sense, exists if an official

knows of and disregards an excessive risk to inmate health or safety; the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

It is well established that mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred, does not provide a basis to find a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828 (1992). Diagnostic techniques and treatments are a "classic example of a matter for medical judgment", and medical staff is vested with broad discretion to determine what method of diagnosis and/or treatment to provide its patients. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp.2d 261, 264 (W.D.N.Y. 1998).

Plaintiff has submitted nothing to demonstrate the existence of a

serious medical need of constitutional proportions.  Although plaintiff's medical indifference claims are difficult to evaluate, given his refusal to participate in a court ordered deposition or authorize release of his medical records, it appears from his submissions that his complaints are limited to failure to treat his allergic condition, which resulted in various symptoms including hives.  In the face of defendants' summary judgment motion, it was incumbent upon plaintiff to come forward with evidence to establish the existence of genuine issues of material facts bearing upon the essential element of his claim including, significantly, the existence of a serious medical need.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. Because plaintiff has failed to satisfy this burden, I recommend dismissal of his medical indifference claims on the merits.  *Chavis v. Kienert*, No. 9:03-CV-0039, 2005 WL 2452150, at *23 (N.D.N.Y. Sept. 30, 2005) (Scullin, C.J.).

### 3.   Due Process

The third component of plaintiff's claims entails assertion of procedural due process claims with regard to tier hearings held on November 12, 2002 and January 6, 2003.  Plaintiff's complaint, however,

does not disclose either the particulars of the hearings involved or,

significantly, what if any disciplinary sanctions resulted.  The allegations

surrounding the November 12, 2002 hearing simply allege the denial of

his right to appear at the hearing and to be afforded meaningful

assistance.  The January 6, 2003 hearing, according to the plaintiff,

resulted in an unspecified way in the denial of his right to an impartial

hearing.[19]

To successfully state a claim under 42 U.S.C. § 1983 for denial of

due process arising out of a disciplinary hearing, a plaintiff must show that

he or she both (1) possessed an actual liberty interest, and (2) was

deprived of that interest without being afforded sufficient process.  *See*

*Tellier v. Fields,* 260 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted);

*Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir.

1996).

---

[19]     Plaintiff's claim relative to the January 6, 2003 hearing also raises the
specter of a retaliation cause of action, asserting that this denial occurred after
defendants' receipt of a summons in a federal action.  Such a claim of issuance of a
misbehavior report in retaliation for commencement of suit, which constitutes protected
activity for purposes of a retaliation claim, *see Baskerville v. Blot,* 224 F.Supp.2d 723,
731 (S.D.N.Y. 2002) (citing, *inter alia*, *Bounds v. Smith*, 430 U.S. 817, 821-32, 97 S.Ct.
1491 (1977)), could support such a cause of action if the plaintiff were able to establish
adverse action subsequently taken by the defendants and a nexus between the two.
In this action, however, the record is devoid of any information that would establish
such a nexus, including information which would disclose the time frame associated
with the receipt of the summons and the issuance of misbehavior reports.

In *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84, 115 S. Ct. at 2300; *Tellier*, 280 F.3d at 80; *Hynes*, 143 F.3d at 658. Since the prevailing view is that by its regulatory scheme New York State has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor *(see, e.g., LaBounty v. Coombe,* No. 95 CIV 2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin,* No. 94-CV-985, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001) (Kahn, J.)), I must find that the conditions of plaintiff's SHU confinement as alleged do not rise to the level of an atypical and significant hardship under *Sandin* in order to recommend that defendants' motion be granted.

Atypicality in a *Sandin* inquiry is normally a question of law.[20]  *Colon*

---

[20]     In cases where there is factual dispute concerning the conditions or duration of confinement, however, it may nonetheless be appropriate to submit those disputes to a jury for resolution.  *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).

*v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner,* 197

F.3d 578, 585 (2d Cir. 1999).   When determining whether a plaintiff

possesses a liberty interest, district courts must examine the specific

circumstances of confinement, including analysis of both the length and

conditions of confinement.  *See Sealey*, 197 F.3d at 586; *Arce v. Walker,*

139 F.3d 329, 335-36 (2d Cir. 1998); *Brooks v. DiFasi,* 112 F.3d 46, 48-49

(2d Cir. 1997).  In cases involving shorter periods of segregated

confinement where the plaintiff has not alleged any unusual conditions,

however, a detailed explanation of this analysis is not necessary.[21]

*Hynes*, 143 F.3d at 658; *Arce*, 139 F.3d at 336.

Assuming, without deciding, that plaintiff can establish the existence

of a liberty interest deprivation sufficient to trigger the Fourteenth

Amendment's due process requirements, the record is devoid of any

---

[21]     While not the only factor to be considered, the duration of a disciplinary
keeplock confinement remains significant under *Sandin*.  *Colon*, 215 F.3d at 231.
Specifically, while under certain circumstances confinement of less than 101 days
could be shown to meet the atypicality standard under *Sandin* (*see id.* at 232 n.5), the
Second Circuit generally takes the position that SHU confinement under ordinary
conditions of more than 305 days rises to the level of atypicality, whereas normal SHU
confinement of 110 days or less does not.  *Id.* at 231-32 (305 days of SHU
confinement constitutes an atypical and sufficient departure).  In fact, in *Colon v.
Howard* a Second Circuit panel split markedly on whether or not adoption of a 180-day
"bright line" test for examining SHU confinement would be appropriate and helpful in
resolving these types of cases. *See id.* at 232-34 (Newman, C.J.), 235-37 (Walker,
C.J. and Sack, C.J., concurring in part).

evidence to indicate that plaintiff was deprived of procedural due process

with regard to the two hearings in issue.  The record discloses that after

the issuance on October 20, 2002 of two misbehavior reports based upon

letters admittedly authored by the plaintiff regarding Judge Edgar

Nemoyer and threats of harm to a correction officer, Chavis refused to

attend a disciplinary hearing conducted by defendant Fitchette on

November 12, 2002.  Defendants' Motion (Dkt. No. 60) Exh. P.  This

refusal effectively precludes defendant from contending that his due

process rights were violated with regard to that hearing, absent proof –

which is completely lacking from the record – that the hearing conducted

in Chavis's absence failed to meet minimum due process requirements in

some other regard.  *Moody v. Miner*, 864 F.2d 1178, 1180-81 (5th Cir.

1989)

The second prong of plaintiff's due process claim relates to a tier

hearing conducted by Lieutenant Donald Quinn on January 6, 2003.[22]

The record is less clear as to plaintiff's claims surrounding the January 6,

2003 hearing conducted by defendant Quinn.  Plaintiff filed a grievance

_____

[22]    It appears that plaintiff's removal from the hearing prior to its completion
on January 6, 2003 was required, based upon his being uncooperative conduct and
verbal harassment of hearing officer Quinn.  Defendants' Motion (Dkt. No. 60) Exh. T.

(UST-14746-03) arguing that defendant Quinn should not have served as a hearing officer.  In order to establish a procedural due process claim based upon alleged bias on the part of the hearing officer, a plaintiff must establish that the hearing officer is so insufficiently impartial as to present a "hazard of arbitrary decisionmaking." *Wolff v. McDonnell*, 418 U.S. 539, 571, 94 S.Ct. 2963, 2982 (1974).  In this instance plaintiff has alleged only that defendant Quinn, while prior to serving as a hearing officer, was a named defendant in another pending action brought by Chavis.  This allegation fails to demonstrate the requisite bias necessary to support a due process deprivation.  *See Gay v. Shannon*, No. Civ. A. 02-4693, 2005 WL 756731, at *7 (E.D. Pa. Mar. 1, 2005).

### 4.   Cruel and Unusual Punishment

The last element of plaintiff's complaint surrounds his claim that his Eighth Amendment rights were violated when, on multiple occasions, he was provided meals containing adulterated food.

Undeniably, the Eighth Amendment's prohibition of cruel and unusual punishment extends to the food provided to prison inmates. While the Eighth Amendment does not elevate to constitutional significance an inmate's dislike for the food served or the portions

43

received *(e.g., Word v. Croce*, 169 F. Supp. 2d 219, 226 (S.D.N.Y. 2001)),
it does require that prisoners be given "nutritionally adequate food that is
prepared and served under conditions which do not present an immediate
danger to the health and well being of the inmates who consume it."
*Ramos v. Lamm,* 639 F.2d 559, 571 (10th Cir. 1980) (citations omitted),
*cert. denied*, 450 U.S. 1041, 101 S. Ct. 1759 (1981); *see also Robles v.
Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citing *Ramos)*; *Cunningham v.
Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977).

In this instance plaintiff has alleged that defendant Streeter
tampered with his food on a number of occasions.  However skeptical the
court may be about plaintiff's ability ultimately to demonstrate that the
tampering rose to a level of constitutional significance, I am unable to
conclude, particularly in the absence of any affidavit from defendant
Streeter regarding his actions, that plaintiff cannot establish such a claim
with the satisfaction of a reasonable factfinder.  Accordingly, I recommend
against dismissal of plaintiff's food tampering claim on the merits.

IV.   SUMMARY AND RECOMMENDATION

_____The record in this case, which chronicles plaintiff's refusal to
cooperate with efforts to air his complaints, both at the grievance level and

before this court, supports a finding that certain of plaintiff's claims should be dismissed as not fully exhausted prior to commencement of suit. With regard to the remaining claims, I find that based upon the record before the court that there are no genuine issues of material requiring in a trial with regard to most, although not all, of those claims, and that plaintiff has failed to establish any constitutional violations, as a matter of law with regard to those claims. Finally, as a sanction for plaintiff's unjustified failure to comply with the court directive that he appear that submit a deposition by defendant's counsel, I recommend dismissal of plaintiff's complaint, though without an award of costs and attorneys' fees.

Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 60) dismissing plaintiff's complaint be GRANTED, and that plaintiff's complaint be DISMISSED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have TEN days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Fed. R. Civ. P. 6(a), 6(e), 72; 28

45

U.S.C. § 636(b)(1);  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citations omitted); and it is further hereby

ORDERED that the Clerk of the Court serve a copy of this Report

and Recommendation upon the parties by regular mail.


Dated:    December 7, 2005
          Syracuse, NY

                                    David E. Peebles
                                    U.S. Magistrate Judge